**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LORENA RICHARDSON,
individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.

STATEWIDE HEALTHCARE SERVICES,
LLC F/K/A STATEWIDE HEALTHCARE
SERVICES, INC. AND D/B/A OXFORD
HEALTHCARE,

        Defendant.

Case No. 1:17-cv-00060
Judge Manish S. Shah
Magistrate Judge Jeffrey T. Gilbert

_____

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR SETTLEMENT APPROVAL
OF FLSA SETTLEMENT AND DISMISSAL OF CLAIMS**
_____

## INTRODUCTION

On May 28, 2019, with the assistance of retired Judge Wayne R. Anderson, the Parties reached a proposed settlement in the above-captioned case, and now jointly move the Court for approval of their proposed settlement.

Through this joint motion and memorandum and supporting exhibits, the Parties respectfully request this Court approve their settlement in this Fair Labor Standards Act ("FLSA") collective action for unpaid overtime compensation, and to dismiss this case with prejudice. As detailed below, the Court should grant the Parties' motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* disputes as to liability and damages under the FLSA.

## DISCUSSION

### I. SUMMARY OF THE LITIGATION

On January 4, 2017, Named Plaintiff Lorena Richardson (the "Named Plaintiff") filed this FLSA collective action lawsuit against Help At Home, LLC f/k/a Help At Home, Inc., and Statewide Healthcare Services, LLC f/k/a Statewide Healthcare Services, Inc., d/b/a Oxford Healthcare (collectively, "Defendants"), individually and on behalf of other "similarly situated" individuals. (Compl., ECF No. 1.) The Named Plaintiff worked as a licensed practical nurse, providing home care services to elderly and disabled persons. (Compl. ¶¶ 4, 18.) The Named Plaintiff alleged that Defendants employed registered nurses, licensed practical nurses, certified nursing assistants, home health aides, and other home healthcare workers to provide home healthcare services. (Compl. ¶ 14.) The Complaint alleged that Defendants violated the FLSA, 29 U.S.C.§ 201 *et seq.*, by failing to pay them overtime premiums for hours worked in excess of forty per week. (Compl. ¶¶ 22, 23.)

1

Instead of answering the Complaint, Defendants moved to dismiss, arguing that Help At Home, LLC f/k/a Help At Home, Inc. ("Help At Home") was not the Named Plaintiff's employer. (*See* ECF No. 23.) The Court agreed; on May 15, 2017, Help At Home was dismissed from the case. (*See* ECF No. 45.) The Named Plaintiff's claims against Statewide Healthcare Services, LLC f/k/a Statewide Healthcare Services, Inc., and d/b/a Oxford Healthcare ("Oxford" or "Defendant") remained live.

On July 14, 2017, the case was conditionally certified as an FLSA collective. (*See* ECF No. 59.) The Court certified the following collective class:

> All Home Health Care Workers, Licensed Practical Nurses, Certified Nursing Assistants, Home Health Aides, Hourly Paid Registered Nurses, (or Similar Titles) who are or have been employed by Statewide Healthcare Services, LLC f/k/a Statewide Healthcare Services, Inc. and d/b/a Oxford Healthcare since three years prior to filing the Complaint until the date of final judgment in this matter, except for staffing or frontline supervisors.

(*See id.*; Pls.' Mot. Cond'l Class Cert. at 5, ECF No. 50.) Notice of the lawsuit was mailed and emailed to eligible collective class members, and a total of 1,290 individuals joined the Named Plaintiff in this lawsuit.

During the following months, the Parties engaged in discovery. Plaintiffs took the depositions of Oxford's two Regional Vice Presidents and twice deposed Oxford's Rule 30(b)(6) representative. Oxford deposed the Named Plaintiff and a witness disclosed by Plaintiffs as having developed Plaintiffs' damages calculation.

In early 2018, Oxford provided Plaintiffs with payroll data and time data for purposes of calculating Plaintiffs' damages. The Parties agreed to stay discovery deadlines to participate in mediation with a third-party neutral. (*See* ECF No. 176.) On July 24, 2018, the Parties mediated

this case with retired Judge Wayne R. Anderson who is experienced in mediating wage and hour matters. The Parties were unable to reach an agreement at that time.

Plaintiffs then updated their damages calculation developed through the payroll and time data Oxford provided and supplemented their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

On January 22, 2019, Plaintiffs moved for final certification and Oxford moved to decertify the conditionally certified collective. (*See* ECF Nos. 190, 191.) Briefing on those motions was finalized in February 2019. While these motions were under advisement with the Court, the Parties again engaged Judge Wayne R. Andersen in settlement discussions.

On May 28, 2019, the Parties reached an agreement in principle to settle the litigation. The agreement required Defendant to provide additional time and payroll data to Plaintiffs, which Defendant did between May and September, 2019. The settlement was reached as a result of arms-length negotiations between the Parties with the assistance of Judge Andersen. The Parties subsequently formalized their settlement into a full Final Settlement Agreement and Release attached hereto as Exhibit 1 for the Court's review and consideration. Counsel for the Parties at all times vigorously pursued their respective positions and the rights of their clients throughout the negotiations, engaged in extended legal and factual analysis, discovery, damages analyses, and good faith, arms-length negotiations regarding settlement.

## BACKGROUND AND TERMS OF SETTLEMENT

### I. DATA ANALYSIS FOR MEDIATION

As discussed above, Defendant provided Plaintiffs' Counsel with pay and timekeeping data for the Named Plaintiff and each of the Opt-in Plaintiffs who joined the case.[1]  The data provided included each Plaintiff's dates of employment and pay data.  (Srey Decl. Ex. 1 ¶ 6.) Defendant represented to Plaintiffs' Counsel that the provided data was accurate and complete.

With this data, Plaintiffs' Counsel conducted an individual damages analysis for each Plaintiff on a workweek-by-workweek basis.  For 96.9% of the Opt-in Plaintiffs, the weekly hours worked considered only Defendant's time data.  For the other 3.1% of Opt-in Plaintiffs, the weekly hours worked considered both the time and pay data to account for known issues with certain pay codes.[2]  Plaintiffs' Counsel used payroll data to calculate each Plaintiff's regular weekly hourly rate of pay.  Once weekly earnings and hours worked were calculated, Plaintiffs calculated the overtime pay owed to each Plaintiff by applying the same formula for all Plaintiffs.  Specifically, Plaintiffs multiplied overtime hours by one-half (0.5) of each Plaintiff's hourly rate to determine the overtime wages owed. The damages analysis also considered liquidated damages and willfulness or third-year damages.

### II. SETTLEMENT AMOUNT AND ALLOCATION

After engaging in a mediation with Judge Wayne R. Andersen, and follow- up settlement negotiations, the Parties were able to reach an agreement to resolve all the claims of Plaintiffs.

---

[1] Plaintiffs' Counsel timely received a consent form from Opt-in Plaintiff Teresa Sangster's ("Sangster"), but inadvertently failed to file it with the Court.  The Parties have agreed to include Sangster in the settlement despite this oversight.

[2] As explained in Plaintiffs' Memorandum in Support of Motion for Final Certification and the Final Settlement Agreement, Plaintiffs identified issues relating to certain pay codes and "units" within Defendant's payroll data.  (*See, e.g.*, Mem. Supp. Mot. Final Certification 4, ECF No. 190.)

(*Id.* ¶ O.)  The agreement was finalized and memorialized in a "Final Settlement Agreement and Release" (the "Agreement") that was fully executed on September 25, 2019.  (*See generally id.*) The total settlement amount of $940,000.00 represents a significant recovery.  After attorneys' fees, out-of-pocket litigation costs, a $5,000 settlement administration/contingency fund,[3] and a $2,500 service payment to the Named Plaintiff were deducted form the total settlement amount, the remaining funds ($595,202.49) constitutes the "Allocation Fund."  (Ex. A. to the Agreement.)

From the Allocation Fund amount, each Plaintiff's individual allocation was determined based on a formula that took into consideration a number of factors, including the date the "opt-in" consent form was filed with the Court, the length of employment the Plaintiff worked in a conditionally certified position within the FLSA's three-year statute of limitations period, the income each Plaintiff earned during this time period, and the number of overtime hours each Plaintiff worked each week during the statutory period.  (*Id.* ¶ 6.)  Under this allocation formula, Plaintiffs are receiving over 70% percent of their 3-year liquidated damages.  Each Plaintiff's individual allocation is attached as Exhibit A to the Agreement.

## III.    NOTICE OF SETTLEMENT AND OPPORTUNITY TO REJECT

On Friday, September 27, 2019, Plaintiffs' Counsel distributed via regular mail and email—for those Plaintiffs that provided email addresses to Plaintiffs' Counsel—the Notice of Settlement to all Plaintiffs.  (Ex. B to the Agreement.)  The Settlement Notice informed each Plaintiff of the terms of the settlement, including each Plaintiff's individual settlement amount

---

[3] Under the terms of the Agreement, the $5,000.00 settlement administration is to be used to effectuate the purposes of the Agreement, and any unused portion of this fund will be reallocated to the Plaintiffs on a pro rata share basis.

from the Allocation Fund. (*Id.*) The Notice also described the various factors considered in determining individual allocations. (*Id.*)

The Notice advised each Plaintiff of the option to either accept or reject his or her individual settlement offer.[4] (*Id.*) Any Plaintiff who did not wish to take part in the settlement could reject the settlement offer. (*Id.*) If desired, these Plaintiffs would have the opportunity to pursue their claims on their own and would receive the benefit of consent-based tolling if they re-filed their claim within thirty (30) days of the Court's dismissal of this case. The Notice also outlined the release of claims that is part of the settlement. (*Id.*)

## IV.    THE RELEASE OF CLAIMS

In consideration for the settlement payment from Oxford, each Plaintiff is required to release the following against Oxford:

> Each and every Settling Plaintiff hereby knowingly and voluntarily releases Defendant from/for all known and unknown claims for overtime compensation, unpaid wages, and minimum wages, liquidated damages, penalties, and interest under the FLSA, 29 U.S.C. § 201, *et. seq.*, state law, or common law, arising from her or his employment with Defendant as a home health care worker up to May 28, 2019 ("Released Claims").

(*Id.*) If the Court approves of the settlement, then Oxford will deliver the settlement proceeds to Plaintiffs currently employed by Oxford via paycard or direct deposit within twenty-one (21) days of the Court's approval of the settlement. (*Id.*) For those Plaintiffs no longer employed by Oxford, Oxford will deliver those settlement proceeds to Plaintiffs' Counsel for distribution within twenty-one (21) days of the Court's approval of the settlement. (*Id.*)

---

[4] The Notice inadvertently failed to include a deadline for Plaintiffs to reject the settlement should they choose to do so. Plaintiffs' Counsel immediately rectified this by sending a follow up communication on October 1, 2019, explaining that the deadline to opt-out of the settlement is October 28, 2019. (Srey Decl. Ex. 2.)

## ARGUMENT

The Parties have reached a settlement agreement, and notice of the settlement has been distributed to the Plaintiffs. The settlement fairly and reasonably resolves the Parties' claims and defenses and the Court should enter an order approving the settlement.

### I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action, personal jurisdiction over the Defendant, and venue is proper. An FLSA action shall be brought in a federal or state court of competent jurisdiction. 29 U.S.C. § 216(b). This action was filed in the United States District Court for the Northern District of Illinois pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331, for claims arising under the FLSA, 29 U.S.C. § 201 *et seq.* Venue is appropriate in this District.

### II. THE PROPOSED SETTLEMENT APPROPRIATELY RESOLVES THE PARTIES' CLAIMS AND DEFENSES

#### A.    Standard for Approval of Settlement of FLSA Collective Actions

There are two ways in which claims under the FLSA can be settled and released by employees. First, Section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c). The second, which arises in the context of a private lawsuit brought by an employee against an employer under Section 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement. *See Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994–95 (N.D. Ind. 2010) (explaining that stipulated FLSA settlements must be approved by the court). In order to approve a settlement proposed by an employer and employees, a court must determine that the

settlement was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Butler v. Am. Cable & Tel., LLC*, No. 09-5336, 2011 WL 4729789, at \*9 n.9 (N.D. Ill. Oct. 6, 2011); *Roberts v. Apple Sauce, Inc.*, No. 3:12-830, 2014 WL 4804252, at \*1 (N.D. Ind. Sept. 25, 2014). This Court follows the Eleventh Circuit's Lynn's Food factors in approving FLSA settlements. *See, e.g.*, *Binissia v. ABM Indus., Inc.*, Nos. 13-1230, 15-6729, 2017 WL 4180289, at \*3 (N.D. Ill. Sept. 21, 2017). There, the Court detailed the circumstances justifying court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354. The decision to approve settlement of an FLSA collective action lies within the trial court's discretion. *Id.*

The Court performs two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Courts commonly rely upon the adversarial posture of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* If the proposed settlement reflects a

reasonable compromise over the contested issues, the Court may approve the settlement to continue advancing the policy of encouraging settlement of litigation.

The second prong of the Court's settlement approval inquiry focuses on whether the proposed settlement is fair and reasonable.  When reviewing a FLSA settlement, a court normally considers the following factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Burkholder*, 750 F. Supp. 2d at 995 (citation omitted); *Owens v. GLH Capital Enter., Inc.*, No.16-1109, 2018 WL 1240461, at *2 (S.D. Ill. Mar. 9, 2018) (citation omitted).

### B. A *Bona Fide* Dispute Between the Parties Existed Over the Alleged  Liability and Damages

This litigation was hotly contested from its inception.  Therefore, based on the contested nature of the litigation of the quality of this settlement, the Court should conclude that the settlement is a reasonable resolution of a *bona fide* dispute.

Plaintiffs claim that Defendant failed to pay them time-and-a-half for hours worked over 40 in a workweek, and that this case was properly certified as a collective action.  Defendant firmly believed otherwise, that Plaintiffs' claims are too internally dissimilar and "subject to a great array of idiosyncratic work conditions, supervisors, job titles, work duties, statutory and regulatory exemptions, and governing contracts for Plaintiff[s] to maintain this action collectively."  (Def.'s Resp. Opp'n Pls.' Mot. Final Certification 1–2, ECF No. 197.)  Although both Parties continue to firmly believe in the merits of their respective positions, given the time

and expenses associated with full-blown litigation and an eventual trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendant to Plaintiffs in exchange for releases of claims by Plaintiffs in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues that a mere waiver of statutory rights brought about by an employer's overreaching.").

"Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Burkholder*, 750 F. Supp. 2d at 995. This settlement is a result of contested litigation given the fact that settlement was reached in the context of this lawsuit. This case has been pending for well over two years, and settlement was reached while the Parties' motions for final certification and decertification were pending. The Parties have had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. For these reasons, a *bona fide* dispute clearly exists in this case, and the Court should conclude that the proposed settlement is the product of contested litigation.

C.     **The Settlement is Fair and Reasonable**

All of the pertinent factors militate towards the conclusion that the settlement is fair and reasonable.

Continuing litigation would be complex, expensive, and protracted. Prior to settlement, the Parties had filed cross motions for final certification and decertification. (*See* ECF Nos. 190 and 191.) Regardless of the Court's ruling on those motions, a trial in some fashion—whether on a collective or individual basis—was looming. The trial itself would have been complex, and post-trial motions would further delay any judgment from being entered. Settlement avoids the risks of continued litigation and brings finality to this action much quicker.

Plaintiffs' Counsel are pleased to report that not a single member of the collective elected to opt-out of the settlement. This represents compelling evidence that the proposed settlement is fair and reasonable.

The stage of proceedings and the amount of discovery completed also weighs towards approving the settlement. Discovery was completed and, after the Parties received the Court's ruling on final certification and decertification, the case was ready to be tried. Despite the late stage of the litigation, significant amount of issues remained. Thus, the Parties were likely to engage in significant pre-trial motion practice, further driving up the expense and time of litigation. Settlement puts an end to continuing expenditures of time and financial resources.

The risks of establishing liability favor settlement approval. Defendant has continued to challenge its liability throughout this litigation. Prior to settlement, Defendant vigorously objected to this case continuing on a collective basis and argued that it was not liable for all of the alleged overtime violations for at least two main reasons. First, Defendant argued that members of the conditionally certified collective were exempt from overtime under either the learned professional exemption. Second, Defendant argued that the effective date of the DOL's Final Rule effecting home healthcare workers was October 12, 2015, some 10 months after the Final Rule was implemented. In short, Defendant has continued to deny the extent of its alleged

11

liability throughout this litigation. Settlement ends the Parties' fight over the scope of Defendant's liability.

The Parties anticipate that there would have been issues with Plaintiffs' establishment of damages at trial, which further supports settlement approval. Principally, if the case proceeded as a collective, damages would be established based on the testimony of Plaintiffs' damages witness, who created the collective-wide damages calculation which Plaintiffs contended was admissible under Federal Rule of Evidence 1006. Defendant would have challenged proving damages in this manner and the admissibility of Plaintiffs' damages calculation. (*See* Def.'s Mot. Bar, ECF No. 185.)

The seventh factor, the ability of the Defendant to withstand a larger judgment, also supports finding the settlement reasonable. Plaintiffs are confident that Defendant is presently able to satisfy the settlement amount. If this case went to trial, however, any judgment Plaintiffs may have obtained would not likely be realized for quite some time. In the intervening months, Defendant's financial situation could change significantly to the point that paying a judgment, similar to the settlement amount or significantly larger, may be problematic. This settlement ensures Plaintiffs receive a significant percentage of their total damages and avoids any potential bankruptcy issues that could have developed if the litigation continued and a significant judgment was obtained.

The range of reasonableness of the settlement fund in light of the best possible recovery also weighs in favor of settlement approval. The settlement amount guarantees Plaintiffs will

receive over 70% of their best-case scenario damages.  This represents a significant recovery and further underscores the reasonableness of the settlement.[5]

Finally, the settlement represents significant value for Plaintiffs, especially when the risks of continued litigation are considered.  As has been discussed, there were real risks of maintaining the collective action through trial.  When the settlement was reached, the Parties' motions for final certification and decertification were pending.  If the case were decertified, Plaintiffs lose the value of the collective and the cases would proceed on an individual basis. Given the relatively small amount of each individual's claim, many opt-in Plaintiffs may choose to abandon their claims instead of proceeding with individual litigation.

Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs and should therefore be approved.

## III.     PLAINTIFFS' COUNSELS' REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE FULLY AWARDED

In connection with this motion, Plaintiffs respectfully move this Court for an order approving as reasonable, Plaintiffs' Counsels' request for attorneys' fees and out-of-pocket litigation costs.

Under the FLSA, the court "shall in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  What constitutes a reasonable fee is within the sound discretion of the district court.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A critical factor in determining the reasonableness of the amount to award as attorneys' fees is the success of the litigation.  Id. at 463.

---

[5] Moreover, Plaintiffs instituted a $50 floor for each individual settlement amount.  This means that the 120 opt-in Plaintiffs whose damages were below $50 will actually receive greater that 70% of their best-case scenario damages.

The amount of fees that constitutes a reasonable attorneys' fee "must be judged on the facts and circumstances of each case." *State of Ill. v. Sangamo Const. Co.*, 657 F.2d 855, 862 (7th Cir. 1981). In common fund cases such as this one, utilizing the percentage method to calculate attorney fee awards is preferred. *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015). "A reasonable attorney's fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Here, the Parties' Agreement provides for Plaintiffs' Counsel to seek the Court's award of one-third of the total settlement amount for reasonable attorneys' fees ($313,333.33) and out-of-pocket litigation costs ($34,443.38). (Ex. A ¶ 5A.) Plaintiffs' Counsel respectfully requests this Court approve their requested attorneys' fees. This amount is reasonable for several reasons.

First, these fees are fair and reasonable in light of the significant results Plaintiffs' Counsel achieved for the Plaintiffs. This result was achieved without requiring any opt-in Plaintiff other than the Named Plaintiff to engage in formal discovery (unlike many other FLSA collective actions) because of Plaintiffs' Counsel's efforts. Plaintiffs' Counsel litigated this case aggressively and effectively, which resulted in substantial monetary relief for Plaintiffs. Plaintiffs' Counsel gathered the necessary information regarding the merits of Plaintiffs' claims and Defendant's defenses to pursue mediation, interviewed many of the opt-in Plaintiffs who joined the case, thoroughly analyzed the payroll and timekeeping data, and conduced a detailed damages analysis for each Plaintiff.

Second, the total requested attorneys' fees represents one-third (33 1/3) percentage of the total settlement amount in a contingency fee arrangement between Plaintiffs and Plaintiffs' Counsel. Plaintiffs' Counsel took this case on a contingency basis and has legal services

agreements with the Named Plaintiff and many of the opt-in Plaintiffs. (Srey Decl. ¶ 10.) Those legal services agreements expressly provide for payment of attorneys' fees to counsel in the amount of one-third of any settlement. (*Id.*) The Court should honor these private agreements and approve the payment of attorneys' fees on a contingency basis. *See Burkholder*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (noting that one-third is "comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action"); *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ("Courts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard."); *Day v. NuCO2 Mgmt., LLC*, No. 1:18-2088, 2018 WL 2473472, at *2 (N.D. Ill. May 19, 2018) ("One-third of the total settlement fund is consistent with market rate in the Northern District of Illinois charged by experienced plaintiffs' counsel in contingent-fee wage and hour class and collective actions.").

Because of this contingency fee arrangement, Plaintiffs' Counsel have not received any payment for their time spent litigating the case, nor have they received reimbursement for their out of pocket costs during the litigation. Plaintiffs' Counsel alone undertook the financial risk of potentially unsuccessful litigation. (Srey Decl. ¶ 10.) Moreover, the Notice of Settlement advised each Plaintiff of Plaintiffs' Counsel's one-third fee arrangement with Plaintiffs. (Ex. B to the Agreement.) No Plaintiff objected to the terms of the settlement providing for Plaintiffs' Counsel to receive one-third of the total settlement amount. This, too, should weigh in favor of the reasonableness of the requested attorneys' fees.

Third, the one-third of the settlement amount requested here is within the range typically awarded by district courts in wage and hour cases. *See, e.g., Burkholder*, 750 F. Supp. 2d at 997; *City of Greenville*, 904 F. Supp. 2d at 909; *Castillo v. Noodles & Co.*, No. 16-3036, 2016 WL

7451626, at *3–4 (N.D. Ill. Dec. 23, 2016) (awarding one-third of a $3,000,000 settlement fund in FLSA overtime action); *Furman v. At Home Stores LLC*, No. 1:16-8190, 2017 WL 1730995, at *3–4 (N.D. Ill. May 1, 2017) (awarding one-third of $990,000 settlement fund in FLSA overtime action).

Finally, Plaintiffs' Counsel's request for attorneys' fees is also reasonable under a lodestar crosscheck.[6]  *See Sanderson v, Unilever Supply Chain, Inc.*, No. 10-775, 2011 WL 6369395, at *2 (W.D. Mo. Dec. 19, 2011) (applying the percentage of the fund method and cross-checking the lodestar to determine reasonableness of attorneys' fees); *Heath v. Hard Rock Café Int'l (STP), Inc.*, No. 6:10-344, 2011 WL 5877506, at *3 (M.D. Fla. Oct. 28, 2011) (approving one-third of settlement amount for attorneys' fees after cross-checking plaintiffs' counsel's lodestar).

Plaintiffs' Counsel has significant FLSA experience, particularly in unpaid overtime cases involving home healthcare workers such as this.  Ms. Srey is Partner at Nichols Kaster, PLLP ("Nichols Kaster"), one of the premier wage and hour law firms in the country.  (Srey Decl. ¶ 11.)[7]  Ms. Srey has been licensed and has worked for Nichols Kaster since 2004.  (*Id.*)  During this time, her practice has focused primarily on large wage and hour class and collective action cases.  (*Id.*)  She has tried several FLSA collective actions.  (*Id.*)  Ms. Srey has handled dozens of wage and hour cases during her legal career, is a frequent speaker nationally and locally on wage and hour topics, and has authored several written materials on wage and hour

---

[6] A summary of Plaintiffs' Counsels' contemporaneously kept billing records are attached hereto as Exhibit 3 to the Srey Declaration.  In addition to the attorneys' fees and costs outlined in Exhibits 3 and 4, Plaintiffs' Counsel will continue to expend time, resources, and costs representing Plaintiffs.  For example, Plaintiffs' Counsel will continue to communicate with and respond to Plaintiffs' questions throughout the settlement process, travel to and attend the settlement approval hearing, and ensure that the settlement agreement is carried out according to its terms.

[7] Exhibit 5 is Nichols Kaster's firm résumé.

issues. (*Id.*) Awarding Plaintiffs' Counsel the requested attorneys' fees amount is appropriate in light of Plaintiffs' Counsels' skill and diligent effort in reaching a favorable settlement for all Plaintiffs.

In addition to the attorneys' fees, Plaintiffs' Counsel also seeks reimbursement for out-of-pocket costs incurred in litigation expenses, which counsel advanced with the risk of no recovery. (*Id.* ¶ 10.) Those costs include photocopies, filing fees, research charges, travel costs, mediation fees, case advertising, and correspondence with clients. (*Id.* Ex. 4.) Plaintiffs' Counsels' private agreements with Plaintiffs provide for reimbursement of costs in addition to payment of attorney's fees. (Srey Decl. ¶ 10.) Plaintiffs' Counsel incurred these costs on behalf of Plaintiffs, and pursuant to the legal service agreement. The Court should honor Plaintiffs' Counsel's out-of-pocket litigation costs through this settlement.

Defendant does not oppose either the attorneys' fees or out-of-pocket costs requests. For all the reasons stated herein, this Court should approve the requested attorneys' fees and costs as reasonable.

## IV.     THE COURT SHOULD APPROVE SERIVCE PAYMENTS TO THE NAMED PLAINTIFF FOR HER TIME AND EFFORT

Under the terms of the Parties' settlement agreement, in addition to her individualized allocation from the Allocation Fund, subject to Court approval, the Named Plaintiff will receive and additional award of $2,500.00 in recognition of her time and effort and services she provided as the sole Named Plaintiff. (*See* Ex. 1 at ¶ 5(C).)

Courts have approved service payments if they are fair and reasonable. *See Massiah v. MetroPlus Health Plan, Inc.*, No. 11-5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases); *Bainter v. Akram Invs., LLC*, No. 17-7064, 2018 WL 4943884, at *2–3 (N.D. Ill. Oct. 9, 2018) (awarding requested service award to named plaintiff); *Whittington v. Taco Bell*

17

*of Am., Inc.*, No. 10-1884, 2013 WL 6022972, at *6 (finding that the $7,500.00 service award to the named Plaintiff was "in no way [ ] an aggrandizement to Ms. Whittington nor is she unduly profiting at the expense of the collective"); *Risch v. Natoli Eng'g Co., LLC*, No. 4:11-1621, 2012 WL 3242099, at *3 (E.D. Mo. Aug. 7, 2012) (finding fair and reasonable $5,000.00 service payment to named plaintiffs in wage and hour class and collective action); *Torres v. Gristede's Operating Corp.*, Nos. 4-3316, 8-8531, 8-9627, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 31, 2010) (awarding a service award of $15,000 to each named plaintiff in the settlement of their FLSA overtime claim).

This service payment is fair and reasonable and should be awarded. First, the Named Plaintiff's efforts in bringing this lawsuit and assisting Plaintiffs' Counsel with the investigation of Plaintiffs' claims and the litigation conferred a substantial benefit on the Plaintiffs. At all times she was readily available to aid Plaintiffs' Counsel in prosecuting this case. (Srey Decl. ¶ 12.) As a result of her actions, the other opt-in Plaintiffs will receive a substantial benefit. Indeed, without her efforts, this case would not have been brought and this settlement would not have been achieved. (Id.) Moreover, this service payment not only recognizes the Named Plaintiff's time and effort and risks taken, but also advances public policy by encouraging individuals to come forward to protect the rights of others in representative actions such as this one. *See Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) (awarding $5,000 incentive payment to each named plaintiff and stating, "Small incentive awards, which serve as premiums to any claims-based recovery form the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits"). In sum, the proposed award is well justified and should be granted.

18

## CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel that has resolved a *bona fide* dispute over overtime wages. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel requests that this Court award as reasonable the attorneys' fees and litigation costs in the amount requested. Finally, the Parties jointly request that this action be dismissed with prejudice.

Respectfully submitted,

Dated: October 30, 2019

**NICHOLS KASTER, PLLP**

/s/Rachhana T. Srey
Rachhana T. Srey, MN Bar No. 340133*
Jay E. Eidsness, MN Bar No. 0395347*
80 South Eighth Street, Suite 4600
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
srey@nka.com

**COHEN MILSTEIN SELLERS
& TOLL, PLLC**
Christine E. Webber, IL Bar No. 6208020
1100 New York Ave. NW
Fifth Floor
Washington, DC 20005
Telephone (202) 408-4600
Fax (202) 408-4699
cwebber@cohenmilstein.com

Carol V. Gilden, IL Bar No. 6185530
190 South LaSalle Street
Suite 1705

19

Chicago, IL 60603
Telephone (312) 357-0370
Fax (312) 357-0369
cgilden@cohenmilstein.com

 *Admitted *Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF
AND THE FLSA COLLECTIVE**


**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
Siobhán M. Murphy, IL Bar No. 6207431
Dawn L. Johnson, IL Bar No. 6243191
Daniel K. Cetina, IL Bar No. 6320423
550 West Adams Street, Suite 300
Chicago, IL  60661
Telephone (312) 345-1718
Fax (312) 345-1778
Siobhan.Murphy@lewisbrisbois.com

**ATTORNEYS FOR DEFENDANT**